Glenda J. DURANT, et al.,
Plaintiffs-Appellants,

v.

OWENS–ILLINOIS GLASS COMPANY, INC., et al., Defendants-Appellees.

Myrtle B. ZANCA, et al.,
Plaintiffs-Appellants,

v.

OWENS–ILLINOIS GLASS COMPANY, INC., et al., Defendants-Appellees.

No. 80–3480.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 24, 1981.

Thornberry, Circuit Judge, dissented and filed opinion.

Joseph W. Thomas, New Orleans, La., for Durant and Geeck.

Darlene Jacobs, New Orleans, La., for Zanca, et al.

Dodd, Barker, Boudreaux, Lamy & Garner, Louis L. Robein, Jr., C. Paul Barker, New Orleans, La., for Glass Bot. Blowers and Canada & Glass Bot.

Stephen D. Ridley, Robert K. McCalla, New Orleans, La., for Owens-Illinois Glass Co.

Edward A. Champagne, William J. Oberhelman, Jr., New Orleans, La., for Joint Apprenticeship Committee.

Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.

## PER CURIAM:

These were consolidated class actions, pursued under Title VII of the Civil Rights Act of 1964, 42 U.S.C., Section 2000e *et seq.*, seeking redress for sex discrimination allegedly committed at the New Orleans Bottle Manufacturing Plant of the Owens-Illinois Glass Company.

In their brief, the appellants describe the case as "an across the board attack on employment policies and practices" at the plant. The District Court found the facts against the plaintiffs and dismissed their cases. The opinion is reported, 517 F.Supp. 710 (1981).

We heard oral argument in New Orleans on the 21st day of April, 1981.

Upon consideration of the record, briefs, findings of the District Court, and oral argument we affirm on the basis of the opinion of the District Court.

We also agree with the refusal of the District Court to award attorneys' fees to the defendants.

The judgment of the District Court is, in all respects,

AFFIRMED.

THORNBERRY, Circuit Judge, dissenting:

Although it is my view that most if not all of plaintiffs' assertions have merit, I wish to note in this dissent those portions of the district court's opinion that most clearly warrant reversal.

### I. *Pregnancy Policy*

The company's contract with the union specified that women in "no case should ... be allowed to return sooner than three months following the birth ... but all women must leave at least two months before the expected date of the birth." Absent some identifiable business necessity, such contractual burdens violate Title VII. *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *deLaurier v. San Diego School Dist.*, 588 F.2d 674 (9th Cir. 1978). But despite the clear and undeniable terms of the policy quoted above, the district court held that plaintiffs "have failed to prove the existence of a policy." Plaintiffs accurately point out in their initial brief the patent flaw in the court's reasoning:

What, you may ask, was the evidence relied on by the district court to support its conclusion that the policy didn't exist? The plant nurse, Josephine Updegraff, determined by looking up the records that many employees worked beyond the seventh month of pregnancy and returned before the third month after birth. What this evidence proves, is unlike the situation in *deLaurier*, there is no business necessity for this policy. The fact that in many cases the policy was not enforced does not mean that the policy did not exist.

I agree and fail to perceive any reasoned basis for disagreement.

### II. *Promotion*

Until the middle of trial, when a woman was promoted to foreman in the Selecting

Department, not one woman at the plant had ever been promoted from an hourly position to a supervisory position. Although the district court acknowledged that "some of the procedures which O–I employs are similar to those which are criticized in *Parson* and *Rowe*," the court distinguished these controlling cases on the ground that in this case "the immediate foreman, while sometimes given input, does not make the promotion decision." But even if the foremen in this instance did not have the same degree of participation present in *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir. 1972) and *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374 (5th Cir. 1978) these two cases do not elevate this factor to a *sine qua non* for recovery. *Rowe* (upon which *Parson* relied) clearly states that the promotion procedure at issue violated Title VII in "several particulars." 457 F.2d at 358. Furthermore, given that upper management in this instance admittedly set discriminatory policies at their plant for years, it is indeed absurd to suggest that the concerns underpinning *Rowe* (and otherwise present in this case) are negated simply because upper management exercised ultimate decisionmaking authority.

### III.  *Entry-Level Hiring*

Crucial to the district court's holding that the plaintiffs failed to establish discrimination in entry-level hiring is its conclusion that "O–I has been willing to hire women as offbearers since 1972." Yet nothing in the court's opinion supports this assertion, and much goes to contradict it. For example, the court concedes (1) that no woman has ever been hired as an offbearer, (2) that prior to 1972 the company had an express policy of excluding women from this position, and (3) that valid statistical evidence strongly indicates that this former, explicit

policy continues implicitly to inform the hiring decisions at the plant. Given this, and other probative evidence not mentioned by the district court,[1] I would conclude that the company policy of excluding women from the offbearer position continued well into the time frame covered by this class action.

In this light, the district court's emphasis on the fact that "the plaintiffs failed to identify a single class member who was interested in the offbearer position" becomes inapposite, since, as the district court states later in its opinion, all the plaintiffs were required to do "at this stage of the litigation [was] prove the existence of a discriminatory policy, and . . . finding those persons who deserve relief because of the policy should be postponed until the relief stage." Furthermore, the district court's argument that the fact that no woman currently employed at the plant wants to become an offbearer constitutes "substantial evidence" that no member of the class would want the job of offbearer is simply wrong. Since the class was certified as including in part "all females who . . . applied for employment," it is apparent that some of those women who applied but were not fortunate enough to gain employment as selectors might well have taken a job as offbearer, if not precluded from doing so by a discriminatory hiring policy.[2]

Thus, finding reversible errors in the district court's decision, I am unable to concur in the majority's unqualified endorsement of the district court's dismissal of appellants' action.

---

1. For example, Mr. Charles Politach, the personnel manager at the plant until 1975 in charge of initial job assignments, testified that he intentionally assigned all newly hired women to only the selector job. Transcript at 777–92.

2. If it is true, as the district court and the majority assume, that no woman during the relevant time period was able and willing to perform the offbearer job, then there would be no victim to compensate. But a search for victims, given the bifurcated structure of this trial, should have been postponed, in the words of the district court, "until the relief stage."